**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DOROTHY ABNER, et al.**                                                          **PLAINTIFFS**

**v.**                                         **CIVIL ACTION NO. 2:14cv63-KS-MTP**

**HERCULES, INC., et al.**                                                **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the Court on Defendant's Motion for Entry of a *Lone Pine*[1] Case Management Order and following a hearing to consider the Motion and the Plaintiff's Opposition thereto, as well as the Plaintiff's proposed Case Management Order. After considering the Motion, the submissions of the parties and the arguments made at the hearing, the Court finds that Defendant's Motion [18] for Entry of a *Lone Pine* Case Management Order should be GRANTED.[2]

**BACKGROUND**

This matter arises from alleged contaminants that some 400 Plaintiffs claim migrated from a site owned and operated by Defendant Hercules, Inc., onto Plaintiffs' properties located in various areas near the site and on some properties some distance from the site. *See generally* Amended Complaint [12]. Plaintiffs allege that the contamination continues to migrate into the area through several pathways, although some Plaintiffs' properties are located a considerable distance away from the Hercules site, or for that matter, any other Plaintiff. *Id.* at 3; Exhibit A - Map [19-1].

This is not the first suit brought against Hercules for alleged contamination of the

---

[1] *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Sup. Ct. Law Div. Nov. 18, 1986).

[2] Though the Court grants the Motion, the case management order that will issue is a modified version of the one submitted by Defendant.

1

surrounding area of the site. *Blackard v. Hercules, Inc.*, filed in this Court on October 2, 2013, involved similar issues. In *Blackard*, eleven Plaintiffs whose properties immediately abut the Hercules site brought suit with allegation similar allegations to those in the case at hand.[3] Before the case settled, extensive discovery was completed, including depositions and production of Hercules documents going back to 1923. The city of Hattiesburg has also filed suit against Hercules with similar allegations.[4]

Defendants moved for entry of a *Lone Pine* case management order in this case on August 19, 2014.[5] *See* Motion [18]. Specifically, Defendant requests that the Plaintiffs, for each of their properties, should be required to submit expert affidavits demonstrating that: (1) the property and the alleged migration pathway have been sampled by a scientifically reliable method; (2) the samples have been analyzed by a qualified laboratory; (3) lab analysis detected constituents that have been detected on the Hercules site; and (4) lab analysis confirmed the existence of a migration pathway between the site and the property. *See* Memorandum in Support of Motion [19] at 6-7. Defendants further requests that only after this information has been submitted and considered should the parties proceed with full discovery. Defendant argues that Plaintiff landowners should first demonstrate that their properties are contaminated or damaged before other expensive discovery is conducted and that a *Lone Pine* order will ensure that only Plaintiffs with arguable claims remain before the Court.

Plaintiffs made their own motion for a case management order on September 5, 2014. *See*

---

[3]*Blackard, et al. v. Hercules, Inc. et al.*, 2:12cv175-KS-MTP, Complaint [1].

[4]*City of Hattiesburg v. Hercules, Inc. et al.*, 2:13cv208-KS-MTP.

[5]The nature of a *Lone Pine* order will discussed more fully *infra*.

Motion [28]. Plaintiffs propose a phased approach in which the case would proceed on a limited number of claims. Specifically, the Plaintiffs propose the following: (1) Each Plaintiff shall provide a "worksheet" regarding the property for which the claims are being asserted, including the ownership interest, tax and mortgage information, a description and time line of significant improvements to the property, and other similar information; (2) Each Plaintiff shall provide a good faith statement identifying the contaminant transport pathway that are alleged to have transported contaminants from the Hercules site to the property at issue; (3) Between twenty and thirty Plaintiffs will be selected from each identified contaminant pathway to create a "discovery pool" on which full discovery will be conducted, and those claims not selected will be stayed or administratively closed; (4) All defendant-specific discovery in this case be consolidated with discovery in the pending case regarding pollution from the Hercules site filed by the City of Hattiesburg;[6] (5) An initial trial will commence to adjudicate the discovery pool claims and resolve common issues, with the remaining claims being resolved in mediation after the trial. *See* Memorandum in Support of Plaintiff's Motion for Entry of Case Management Order [29] at 6-11.

On October 17, 2014, the Court conducted a hearing to hear arguments regarding both Motions [18] and [28]. *See* Order [30].

## APPLICABLE LAW

*Lone Pine* orders derive from a 1986 New Jersey Superior Court decision, where the court entered a pretrial order that required the plaintiffs to provide facts in support of their claims through expert reports. *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Sup. Ct. Law Div. Nov. 18, 1986). The United States Court of Appeals for Fifth Circuit has noted that "Lone Pine orders are designed

---

[6]*City of Hattiesburg v. Hercules, et al.*, 2:13cv208-KS-MTP.

to handle the complex issues and potential burdens of defendants and the court in mass tort litigation." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). While no federal rule expressly authorizes *Lone Pine* orders, multiple courts have interpreted Federal Rule of Civil Procedure 16 to confer such authority to courts in complex litigation. *See McManaway v. KBR, Inc.*, 265 F.R.D. 384, 384 (S.D. Ind. 2009) ("Lone Pine orders are permitted by Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure which provides that a court may take several actions during a pretrial conference, including 'adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or usual proof problems.'").

However, courts have also noted that a *Lone Pine* order is not appropriate in every case or suitable at every stage of litigation. *See, e.g., In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741, 744 (E.D. La. 2008).The Plaintiffs contend that this Court should focus on a number of factors in its determination of whether to enter a *Lone Pine* Order: (1) the posture of the action; (2) the peculiar case management needs presented; (3) external agency decisions impacting the merits of the case, (4) the availability and use of other procedures explicitly sanctioned by federal rule or statute; and (5) the type of injury alleged by plaintiffs and its cause. *See, e.g.*, *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 256 (S.D.W. Va. 2010); *Manning v. Arch Wood Prot. Inc.*, 2014 WL 4198294 at *2 (E.D. Ky. Aug. 21, 2014); *In re Fosamax*, 2012 WL 5877418 at *2 (S.D.N.Y. Nov. 20, 2012). The United States Courts of Appeals for the Fifth Circuit does not require, nor does it prohibit, lower courts from considering the five-part test referenced by the Plaintiffs, but the Court finds that these factors provide a useful and appropriate framework for addressing the Motion [18]. *See Acuna,* 200 F.3d at 340.

## ANALYSIS

Upon consideration of the factors listed above and addressed below, the Court finds that entering a *Lone Pine* order is appropriate at this time.

### *Posture of the Action*

Plaintiffs contend that this factors weighs against the entry of a *Lone Pine* Order because this lawsuit was only recently filed and discovery has not yet commenced. *See* Response [27] at 3. Relying on several recent district court decisions that have noted a reluctance to grant *Lone Pine* order before any meaningful discovery has been conducted, Plaintiffs argue that such measures are appropriate only at later stages of litigation. *See Manning* 2014 WL 4198294 at *2. For instance, Plaintiffs cite *In re Fosamax*, where a *Lone Pine* order was entered after six years of litigation and after "extensive" and "targeted" fact discovery had been conducted.   2012 WL 5877418 at *2. Additionally, Plaintiffs cite *Avila v. Willits Envtl. Remediation Trust*, affirming the issuance of a *Lone Pine* order after five years of litigation.  633 F.3d 828, 834 (9th Cir. 2011).

The Court disagrees with Plaintiffs insofar as they claim they have not had the time and resources necessary to develop their case, as the parties entered into this matter armed with significant history, information and documentation. The *Blackard* case, which concerned very similar allegations of contamination by property owners surrounding the Hercules site, prompted an enormous amount of discovery, with Defendant Hercules providing voluminous records from as far back as the 1920s. These documents illustrated precisely which chemicals were produced or utilized on the site as well as the time period in which they were produced. The Defendant has agreed to a  provision in the case management order stating that discovery conducted in *Blackard*

will be treated as if it were conducted in this case.[7] *See* Memorandum in Support of Defendants' Motion for Entry of *Lone Pine* Case Management Order [19] at 6 n.1. Furthermore, Defendants agree and will be ordered to make available to the Plaintiffs the results of any ongoing testing of the area. *See* Rebuttal [31] at 7 n. 21. Accordingly, Plaintiffs have the benefit of this previous discovery and the ongoing test results. For the reasons above, the Court finds that the posture of the present action weighs in favor of the issuance of a *Lone Pine* order.

### *The Peculiar Case Management Needs Presented*

In this matter, there are more than 400 Plaintiffs who claim that constituents from the Hercules site have contaminated more than 500 parcels of real estate. *See* Amended Complaint [12]. The Plaintiffs seek damages for the alleged diminution in the values of those properties and mental anguish. *Id.* at 22-23. The pleadings offer little, if any, information as to the type and amount of contaminants founds on these particular parcels of land, the extent to which the property values have been diminished, or specified theories of how the contaminants traveled from the Hercules site to the present alleged locations. The Plaintiff's characterize the entry of a *Lone Pine* order in this case as "grossly unfair" and unduly expensive, but the Court would note that both parties have concerns regarding the time and expense the litigation of the case will require.[8] The Defendant likewise has

---

[7]Plaintiffs contend that the present action is dissimilar from *Blackard*, in that latter involved far more limited contaminant transport pathways than those at issues here. While the Court notes that the cases are not identical and that further discovery might be necessary to develop the Plaintiffs' case, the fact remains that Plaintiffs bear the burden of proof in the first instance, and are required to possess some information regarding their injuries and possible theories of causation before filing suit. *See* discussion *infra*.

[8]Defendants assert that they intend to depose and propound written discovery to the more than 400 Plaintiffs, in additional to any medical professionals who have treated the Plaintiffs for their alleged mental anguish. Defendants also contend they will conduct their own testing of the Plaintiffs' properties for site constituents, and that they will likely pursue third-party discovery

concerns over conducting expensive discovery of properties that have no indication of contamination.

The Federal Rules of Civil Procedure require that the pleadings contain "factual contentions [that] have evidentiary support or, if specifically so identified, will likely have evidentiary support." *See* FED. R. CIV. PRO. 11(b)(3). Furthermore, the Fifth Circuit has held that "[e]ach Plaintiff should have at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries."*Acuna*, 200 F.3d at 340. To date, Plaintiffs have presented no evidence beyond the proximity of the properties to the Hercules site and limited reports regarding the possible locations of contaminants. And as the Defendant correctly notes, the Plaintiffs must eventually test their properties and the alleged migration pathways, thus the issue is primarily one of timing. *See* Memorandum in Support of Defendants' Motion [19] at 6. It is within the Court's discretion to take steps to manage the complex and potentially burdensome discovery that this case will most certainly require. *Acuna*, 200 F.3d at 340. Thus, the Court finds that this factor also weighs in favor of the entry of a *Lone Pine* order.

### *External Agency Decisions Impacting the Merits of the Case*

The third factor involves looking to external agency decisions to see if there are any that impact the merits of the case. In several toxic tort cases, independent agencies have released information that can act as proof or the absence of proof of the claims alleged. *See Manning*, 2014 WL 4198294 at *5; *McManaway*, 265 F.R.D. at 385 (holding that a *Lone Pine* order should issue

---

to identify other sources of any alleged contamination. *See* Memorandum in Support of Defendants' Motion for Entry of *Lone Pine* Case Management Order [19] at 1.

only after the defendant has called into the question the plaintiffs' ability to bring forward necessary causation and other scientific information).

At the hearing, the Plaintiff submitted a map showing all site-related detections of contaminants found by any tests conducted thus far, including tests conducted by the EPA. *See* All Site Related Detections, Exhibit P-2 [32-2]. The data does reflect possible contamination in locations that may coincide with a small number of the Plaintiffs' properties at issue. Thus, the testing conducted thus far does not necessarily prove or disprove the claims of most Plaintiffs, and this examination factor provides little guidance to the Court. In any event, the order entered in this case will require Defendant to provide any test results they receive, including those from outside agencies, to the Plaintiffs promptly upon receipt.

### *Availability and Use of Other Procedures*

Multiple courts have found that *Lone Pine* orders are appropriate only where other available procedural devices such as summary judgment, motions to dismiss, motions for sanctions and other similar rules are insufficient to address the issues at hand. *See Hagy v. Equitable Prod. Co.*, 2012 WL 713778 at *4 (S.D. W. Va. Mar. 5, 2012); *In re Digitek*, 264 F.R.D. at 259. Plaintiffs assert that their proposed case management order will allow the case to proceed pursuant to standard procedural mechanisms. Specifically, the Plaintiffs argue that a mutual selection of test plaintiffs along each transport pathway will generate the maximum amount of information and conclusively resolve a multitude of common issues. For the reasons set forth below, the Court disagrees.

First, the Court notes a map plotting the locations of all properties at issue reflects that several Plaintiffs' properties lie a considerable distance from any other Plaintiff property. *See* Exhibit A - Map [19-1]. Thus, the map presented shows outliers that cannot be reasonably traced

to any alleged pathway. Moreover, the parties do not fully agree to the existence, much less the location, of such pathways, which poses a considerable stumbling block to the parties' selection of test Plaintiffs. Accordingly, Plaintiffs' assertion that full discovery of a small subset of property owners along the contamination pathways will generate a plethora of information and resolve issues is not well-founded.

Second, Plaintiffs' proposed case management order contemplates multiple instances of future agreement between the parties, thus inviting uncertainty and delay as the disagreements are addressed. For instance, Plaintiffs claim they will confer with Defendants on any other property-specific information that Defendants believe should be included in the "worksheets," that the parties will agree upon certain Plaintiffs to compose the discovery pool, etc. *See* Memorandum in Support [29] at 7-8, 10. These proposals appear to be a recipe for further delay, as consensus between the parties appears unlikely at this stage.

This case presents an instance where other procedural tools do not appear to be as effective or efficient as those in the proposed *Lone Pine* order. Moreover, *Lone Pine* orders are regularly used in, and were specifically created for, cases alleging mass environmental contamination. *See Baker v. Anschutz Exploration Corp.,* 2013 WL 3282880 (W.D. N.Y. June 27, 2013) (outlining *Lone Pine* order entered in a case where property owners alleged an oil drilling company contaminated drinking water); *Tatum v. Pactiv Corp.*, 2007 WL 60931 (M.D. Ala. Jan. 8, 2007) (entering *Lone Pine* order where approximately 1,500 Plaintiffs alleges environmental contamination of their properties); *see also Pinares v. United Tech. Corp.*, 2011 WL 240512 (S.D. Fla. Jan. 19, 2011) (finding that *Lone Pine* order was appropriate in case involving only two plaintiffs alleging contamination of their properties, but the companion case was a class action). Accordingly, the

Court finds that this factor also weighs in favor of a *Lone Pine* order.

### *Type of Injury Alleged by Plaintiffs and Its Cause*

As outlined above, this case will likely be "the classic expansive, time-consuming, and highly expert dependant case that gave birth to the Lone Pine case management method." *See Pinares*, 2011 WL 240512 at *2. The complex issues of causation as well as the sheer number of claims renders this case as a prime candidate for a *Lone Pine* order. The Plaintiffs in this matter "do not need discovery to be able to state whether their own properties are contaminated . . . [and] do not need discovery to state the factual basis on which they filed this action." *Id*. Even so, the Plaintiffs have available to them the extensive *Blackard* discovery materials. Therefore, this factor also supports the entry of a *Lone Pine* order.

### *Additional Considerations*

Finally, and perhaps most importantly, the entry of the *Lone Pine* order does not create undue burdens or expenses for the Plaintiffs. Plaintiffs' case management order proposes a selection of several test plaintiffs along each alleged contaminate transport pathway. *See* Memorandum in Support [29] at 6-11. Nothing prevents the Plaintiffs from utilizing this same method to continue or discontinue testing for subsets of plaintiffs along an alleged pathway in order to comply with the Court's order. If Plaintiff's initial testing along a suspected pathway yields negative results for contaminants, Plaintiffs may wish to abandon further testing along that particular pathway or voluntarily dismiss those property owners as Plaintiffs.[9] In other words, an entry of a *Lone Pine* order in no way bars Plaintiff's from using their own proposed methods to limit their burden and

---

[9]Plaintiffs suggest this very procedure in their own submissions. *See* Memorandum in Support of Plaintiff's Motion for Entry of Case Management Order [29] at 10.

expenses. Furthermore, the *Lone Pine* order itself is merely an early step in the case management process. The Court's Order will be a modified version of that proposed by the Defendant. Case management in this matter will occur in phases, and subsequent conferences and orders will be required in order for the action to proceed.

    IT IS, THEREFORE, ORDERED that Defendant's Motion [18] for Entry of a *Lone Pine* Order be GRANTED.

    SO ORDERED this the 10th day of November, 2014.

                                      s/ Michael T. Parker
                                      United States Magistrate Judge