# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

DOROTHY ABNER, *et al.*                                    PLAINTIFFS

V.                            CIVIL ACTION NO. 2:14-CV-63-KS-MTP

HERCULES, INC., *et al.*                                    DEFENDANTS

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court overrules Plaintiffs' objections to the Magistrate Judge's Report and Recommendations, and it **adopts** the Magistrate Judge's Report and Recommendations **in part**. Specifically:

- The Report and Recommendations is **moot** with respect to those Plaintiffs who have settled their claims.

- The Court **adopts** the Report and Recommendations with respect to those Plaintiffs who either declined to approve the settlement agreement and/or failed to return their counsel's communications. The claims of Plaintiffs Donta Blaylock, Carlos R. Griffin, Wihlemenia Hosey, Elisha Jackson, Linzie Myers, Brenda Lee Pollard, Joseph Saucier, Martinez Saucier, Steve Sumrall, Jay Van-Orsdal, Dorothy Warren, Rita White, Patsy Wright, Marsha Bridges, Cedric Dallas, Lucy Holloway-Smith, Jerry Johnson, Pearlie D. Johnson, Deborah Kendrick, Creola McCarty, Abdul Rasulallah, Lashun Singleton, Tracie Stenson, Paul Sykes, Saretha Whitsett, and Billy Carr[1] are **dismissed with prejudice** for their failure to comply with the Court's orders.

- The Court also **adopts** the Report and Recommendations with respect to those Plaintiffs who died while the lawsuit was pending. The claims of Plaintiffs Ollie Bohanna, Dorothy Bridges, Dorothy

---

[1] *See* Exhibit B to Agreed Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 23, 2017), ECF No. 136-2.

Chapman, Ann Georgian, Irma Lee Landrum, and Lamar Roberts[2] are **dismissed with prejudice** for their failure to comply with Court orders. However, the Court will consider reinstatement of these Plaintiffs' claims if they produce to the Court a copy of state court documents demonstrating the issuance of letters testamentary, the administration of an estate, or some substantial progress toward chancery court approval of the settlement within thirty days of the entry of this order.

· The Court **adopts** the Magistrate Judge's Report and Recommendations as to Plaintiffs' counsel's Motion to Withdraw [104]. The Court adopts the same reasoning with respect to Plaintiffs' counsel's supplemental Motion to Withdraw [140]. As all Plaintiffs' claims are either moot or dismissed, Plaintiffs' counsel's Motions to Withdraw [104, 140] is moot.

Accordingly, no Plaintiffs' claims remain pending, and this matter is hereby **closed**.

## A.    *Background*

The Court has outlined the background of this case on several occasions.[3] To frame recent events within the context of the case as a whole, the Court will do so once again.

In this mass tort case, approximately 400 Plaintiffs owning 495 different parcels of property alleged that dozens of different contaminants from Defendant's facility migrated onto their properties through surface water, groundwater, soil, and airborne pathways. Plaintiffs asserted state-law claims of negligence, nuisance, and trespass,

---

[2]*See* Exhibit A to Agreed Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 23, 2017), ECF No. 136-1.

[3]*See, e.g. Abner v. Hercules, Inc.*, No. 2:16-CV-43-KS-MTP, 2017 U.S. Dist. LEXIS 83536, at *6-*10 (S.D. Miss. Jan. 3, 2017); *Abner v. Hercules, Inc.*, No. 2:16-CV-43-KS-MTP, 2016 U.S. Dist. LEXIS 179956, at *218-*229 (S.D. Miss. Jan. 13, 2016).

and they sought a wide variety of damages, including damage to their property values, mental anguish, and punitive damages. *See* Amended Complaint, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. July 2, 2014), ECF No. 12. On August 19, 2014, Defendant filed a motion for entry of a *Lone Pine*[4] Case Management Order. Motion for Entry of *Lone Pine* Case Management Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Aug. 19, 2014), ECF No. 18. Plaintiffs opposed the motion. Plaintiffs' Opposition, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Sept. 5, 2014), ECF No. 27.

On November 10, 2014, the Court granted Defendant's motion and entered Case Management Order No. 1. *See Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP, 2014 U.S. Dist. LEXIS 158892 (S.D. Miss. Nov. 10, 2014). The Court noted that Plaintiffs filed this suit armed with voluminous discovery materials gleaned from a previous case involving similar claims, *Blackard v. Hercules, Inc.*, including deposition transcripts and several decades' worth of documents from Defendant.[5] Plaintiffs already knew every chemical produced or utilized on the site, as well as when they were produced.

---

[4]*See Lore v. Lone Pine Corp.*, 1986 N.J. Super. LEXIS 1626, 1986 WL 637057 (N.J. Super. Ct. Law Div. Nov. 18, 1986).

[5]*See, e.g.* Order on Motion to Compel, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. June 25, 2013), ECF No. 125; Order on Motion for Protective Order, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. Feb. 3, 2014), ECF No. 256; Attachments to Response in Opposition to Motion for Partial Summary Judgment, No. 2:12-CV-175-KS-MTP (S.D. Miss. May 5, 2014), ECF Nos. 351-355; Order to Provide Indexed and Bound Hard Copies of Exhibits, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. May 15, 2014), ECF No. 368.

However, Plaintiffs did not specify the contaminants on their 495 parcels of property or the pathways which carried them from the Hercules site. Plaintiffs essentially relied upon the proximity of the properties to the site[6] and previous reports of contaminant locations.

As Plaintiffs would eventually be required to present scientific evidence of contaminants on their properties and the pathways by which those contaminants traveled from the Hercules site,[7] the Court concluded that the *Lone Pine* order would not increase Plaintiffs' cost of litigation. Indeed, by filing the Complaint, Plaintiffs' counsel had certified to the Court that their "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support." FED. R. CIV. P. 11(b)(3). Likewise, "[e]ach Plaintiff should have at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

Finally, the Court observed that Plaintiffs' map of site-related contaminants

---

[6]The properties' locations range from immediately adjacent to the Hercules site to several miles from it.

[7]*See Prescott v. Leaf River Forest Products, Inc.*, 740 So. 2d 301, 310-11 (Miss. 1998) ("When a claimant alleges trespass as a result of chemical discharges, the burden lies with the claimant to prove an actual physical invasion of the subject property."); *Anglado v. Leaf River Forest Products, Inc.*, 716 So. 2d 543, 548-49 (Miss. 1998) (plaintiffs were required to prove not only that chemical was on their property, but that it came from defendants' facility).

found thus far only coincided with a small number of the properties at issue and, therefore, failed to prove or disprove most of Plaintiffs' claims. The Court likewise noted that Plaintiffs' proposed plan to choose a subset of test plaintiffs to move toward trial and resolve common issues was impracticable. Plaintiffs had not provided any plan for geographically dividing their properties; rather, Plaintiffs suggested that they be divided among their relevant pathways. However, the Court observed that several of the properties were so far away from the Hercules site and the other affected properties that they could not reasonably be traced to any alleged pathway. Finally, the Court noted that the parties did not agree on the existence or location of alleged pathways, and that it was unlikely they would agree on the composition of test groups or the information to be disclosed by them.

In the end, the Court concluded that Defendant's proposed *Lone Pine* order provided the most effective and efficient procedural tool to advance this litigation. It imposed no undue burden or expense on Plaintiffs, as they would eventually have to provide evidence of contamination anyway. Plaintiffs were also free to use their own proposed test-group method to limit the alleged burden of testing – a procedure suggested by Plaintiffs themselves in briefing.

Case Management Order No. 1 required Plaintiffs to provide Defendant with an expert affidavit for each property demonstrating that a) the property and the alleged migration pathway had been sampled by a qualified expert; b) the samples had been analyzed by a qualified laboratory; c) lab analysis had detected constituents that had been detected on the Hercules site; and d) lab analysis had confirmed the existence of

a migration pathway from the Hercules site to the property, or other cause. Case Management Order No. 1, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Nov. 10, 2014), ECF No. 36. The Court also required Plaintiffs to identify the sampling method employed, media sampled, and the migration pathway for each property. Defendant was required to "promptly provide Plaintiffs with any ongoing, additional testing/sampling results of the Hercules site or surrounding area," regardless of its source. Finally, the Court ordered that the *Blackard* discovery materials could be used in this case, and that no discovery would be conducted in this case until Plaintiffs complied with the *Lone Pine* order. The Court advised that Plaintiffs unable to establish the existence of constituents on their property or a migration pathway, or who otherwise did not comply with the order, may be ordered to show cause why their claims should not be dismissed.

Two weeks later, Plaintiffs filed a Motion to Modify Case Management Order No. 1 ("CMO"). Motion to Modify CMO No. 1, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Nov. 24, 2014), ECF No. 37. First, Plaintiffs argued that the CMO's requirements of sampling and pathway analysis were neither technically feasible nor required by Mississippi law. Second, Plaintiffs argued that it was impossible to comply with the CMO's requirements because it precluded them from conducting limited, targeted discovery regarding the chemical compound dioxathion,[8]

---

[8]Dioxathion is the active ingredient in an insecticide Plaintiffs claim was only manufactured by Hercules in Hattiesburg from 1960 to 1988. *See* Exhibit E to Memorandum, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 11, 2015), ECF No. 44-5; Exhibit F to Memorandum, *Abner v. Hercules, Inc.*, No. 2:14-

which was not at issue in *Blackard*. Plaintiffs also argued that, for a variety of reasons, six months was not sufficient time to conduct the required testing.

On February 5, 2015, the Court granted Plaintiffs' motion in part and denied it in part. Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Feb. 5, 2015), ECF No. 42. First, the Court noted that it had not limited Plaintiffs' theories of causation to migration pathways, but that it addressed the issue in the CMO because Plaintiff had suggested dividing the properties by alleged migration pathways. Plaintiffs were free to confirm the existence of a "migration pathway from the Hercules site to the property, or other cause." The Court also rejected Plaintiffs' contention that Mississippi law required no scientific evidence of contamination or causation, citing *Prescott*, 740 So. 2d at 310-11, and *Anglado*, 716 So. 2d at 548-49. But it permitted Plaintiffs to access and utilize discovery materials from another pending case filed by their counsel, *City of Hattiesburg v. Hercules, Inc.*, No. 2:13-CV-208-KS-MTP. Finally, the Court denied Plaintiffs' request to extend the CMO deadline because they had provided no reason they could not immediately begin testing for other contaminants allegedly present on their properties, despite the alleged delay in reliable tests for dioxathion.

Three months later, on May 11, 2015 – the deadline to comply with the *Lone Pine* order – Plaintiffs filed a motion to confirm their compliance with the order and move forward with the case. Motion to Confirm Compliance with CMO No. 1, *Abner v.*

---

CV-63-KS-MTP (S.D. Miss. May 11, 2015), ECF No. 44-6.

*Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 11, 2015), ECF No. 43. Plaintiffs claimed to have collected a) attic dust from fifty of the subject properties,[9] b) soil samples from twenty properties, c) nine samples of sediment from alleged "current and historical drainage pathways" from the Hercules site, d) two surface water samples from "the vicinity of" the Hercules site, e) four water samples from wells drilled "down-gradient of known groundwater contamination around the" Hercules site, f) eleven soil samples from near the wells, g) tree bark and core samples from ten trees on the Hercules site, and h) tree bark and core samples from six trees "in areas off the Hercules site."[10] Twenty-eight of the attic dust samples contained dioxathion, and thirty-six of them contained toxaphene.[11] Forty-four of fifty attic samples, nineteen of twenty soil samples, eight of nine sediment samples, all four well samples, and both surface water samples contained a contaminant. Finally, dioxathion was detected in three of the trees on the Hercules site, and toxaphene was detected in one of the off-site trees.

Plaintiffs argued that these testing results demonstrated that they all have

---

[9]Plaintiffs' counsel, rather than Plaintiffs' experts, chose the properties where attic dust was sampled. Plaintiffs have not articulated any method or plan utilized to obtain a representative sampling of properties.

[10]*See* Exhibit A, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 11, 2015), ECF No. 44-1; Exhibit C, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 11, 2015), ECF No. 44-3.

[11]Toxaphene is a chemical compound that Plaintiffs describe as a "persistent pollutant" and "probable carcinogen." They claim it was manufactured at the Hercules site.

colorable claims. They asserted that the contaminated attic dust samples "confirm[] the existence of an air pathway as the predominant means by which pesticides and other site constituents migrated from the Site to the Plaintiffs' properties." Plaintiffs argued that the presence of dioxathion in the attic dust samples is a "smoking gun" insofar as dioxathion was the active ingredient in an insecticide manufactured exclusively by Hercules in Hattisburg for almost thirty years. Plaintiffs also argued that their testing proved the existence of four distinct pathways from the site: groundwater, surface water drainage, flood plains, and air release. In summary, Plaintiffs argued that all of the testing described above confirmed that contaminants migrated from the Hercules site into surrounding areas, that contaminants spread in all directions via air pathways, and that the contaminants indisputably originated at the Hercules site. Alternatively, they requested additional time to comply with the *Lone Pine* order.

The Court granted the motion in part and denied it in part. Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Aug. 14, 2015), ECF No. 47. It granted Plaintiffs until December 1, 2015 – an extension of almost seven months – to comply with the *Lone Pine* order, but it denied the motion in all other respects.

Plaintiffs promptly filed a Motion for Reconsideration. Motion to Reconsider, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Aug. 17, 2015, ECF No. 48. Therein, Plaintiffs represented that they had recently completed a second phase of testing, and that they had "taken steps to eliminate a handful of properties that were

inadvertently included in the original complaint."[12] In the second phase of testing, Plaintiffs collected fifty-five attic dust samples from forty-two Plaintiffs' properties and seven properties owned by the City of Hattiesburg. All the properties tested were within 1.3 to 2.25 miles of the Hercules site. Measurable amounts of toxaphene and dioxathion were found in twenty-nine of the fifty-five samples. Plaintiffs did not test for any other contaminants. Plaintiffs asserted that, when combined with the first phase of testing, over seventy-five percent of the homes sampled had shown traces of contaminants linked to Hercules. Therefore, they argued that it was more likely than not that they would be able to present sufficient evidence to support their remaining claims after a reasonable opportunity for investigation and discovery. In their reply brief, Plaintiffs argued that a subset of the tested properties should proceed into discovery and toward resolution on the merits.

On November 17, 2015, the Magistrate Judge denied Plaintiffs' Motion for

---

[12] Plaintiffs did not, in fact, narrow the scope of the case by reducing the number of contaminants allegedly present on each property, more precisely drawing subsets of properties for litigation purposes, or eliminating properties geographically distant from the Hercules site and/or other allegedly contaminated properties. Rather – after filing their Motion for Reconsideration – Plaintiffs voluntarily dismissed the claims of three property owners that had retained separate counsel and filed another lawsuit against Hercules before this action was filed, and six individuals who did not even own the property for which they were claiming damages. *See* Unopposed Motion to Dismiss, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Aug. 27, 2015), ECF No. 49; Unopposed Motion to Dismiss, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Sept. 1, 2015), ECF No. 53. Even after these claims were terminated, the case still involved almost five hundred properties, each allegedly contaminated by dozens of chemical constituents, which allegedly made their way on to the properties by four different pathways.

Reconsideration. Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Nov. 17, 2015), ECF No. 60. The Court observed that Plaintiffs had only tested for two of the dozens of contaminants they alleged were on their properties. The Court further observed that hundreds of Plaintiffs' properties remained untested, and that just over half of the subject properties which were tested showed the presence of any contaminant. The Court observed that the *Lone Pine* order did not impose any requirements on Plaintiff that they would not eventually be required to meet in order to prove their case, and that the cost of testing should not surprise them insofar as they chose to file a mass tort suit concerning almost five hundred different properties. Finally, the Court observed that Plaintiffs' latest motions further complicated the case by introducing an alleged pathway that had not been mentioned in previous pleadings. Most of Plaintiffs' samples were of attic dust – allegedly deposited via the newly alleged airborne pathway – but they collected few samples of other media related to the soil and water pathways.

The Court noted that Plaintiffs were free to focus on whichever properties and pathways they wished. But the vast number of properties, dozens of alleged contaminants, and multiple alleged pathways underscored the need to more fully develop Plaintiffs' claims before opening full discovery. While Plaintiffs argued that the test properties constituted a representative sample of claims, the Court noted once again that Plaintiffs had only tested for *two* of *over two dozen* contaminants alleged to be on the subject properties. Likewise, Plaintiffs had introduced the airborne pathway theory, while providing relatively little data concerning the previously alleged soil and

water pathways. Accordingly, it was not clear how Plaintiffs wished to proceed – whether they were abandoning claims of intrusion by contaminants other than dioxathion and toxaphene, limiting their causation theory to an airborne pathway, or desiring to simply proceed forward on all claims despite the negligible evidence produced. In the end, Plaintiffs had simply not provided the Court with sufficient data to determine an efficient and practicable method of moving forward with discovery or selecting representative Plaintiff groups for trial or other purposes.

Plaintiffs promptly appealed the Magistrate Judge's rulings on their motion to confirm compliance with the *Lone Pine* order and Motion for Reconsideration. Plaintiffs' Appeal of Magistrate Judge's Ruling, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Dec. 1, 2015), ECF No. 62. On January 13, 2016, the Court denied the motion. *See Abner*, 2016 U.S. Dist. LEXIS 179956 at *219. The Court noted that the Fifth Circuit had approved the use of *Lone Pine* orders, *id.* at *230, and it considered a variety of factors that other courts have considered in determining whether such orders are appropriate. *Id.* at *230-234. The Court found that the Magistrate Judge's orders were not clearly erroneous or contrary to law insofar as "no one – not even Plaintiffs or their counsel – knows enough about Plaintiffs' properties or claims to craft a reasonably efficient, cost-effective, and practicable plan to move forward with full discovery and toward trial." *Id.* at *235. The *Lone Pine* order neither imposed an "additional or unfair burden on Plaintiffs" nor required them "to produce anything they [would] not ultimately be required to produce in support of their claims."

*Id.* at 234. Accordingly, the Court found that it was a reasonable measure to "manage the complex and potentially very burdensome discovery that mass tort cases like this one require." *Id.*

On February 22, 2016, the Magistrate Judge held an in-person case management conference to hear the parties' proposals for moving forward, "which essentially amounted to a reiteration of the arguments that [had] been expressed through the pendency of [the] case." Order at 3, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Mar. 10, 2016), ECF No. 75. Once again, the Court ruled that each Plaintiff must comply with the *Lone Pine* order before his or her individual claim proceeds to full discovery. *Id.* But the Court permitted any Plaintiffs who had complied with the *Lone Pine* order at least in part to proceed with full discovery as to those contaminants and pathways for which they have fulfilled the order's requirements. *Id.* Plaintiffs who had not complied with the *Lone Pine* order or whose testing had failed to reveal contaminants were granted a modest extension of time to comply. *Id.* at 4. The Court specifically warned Plaintiffs that the claims of those who failed to comply with the *Lone Pine* order within the permitted time may be subject to dismissal without further notice. *Id.* at 5.

On March 25, 2016, the Court held a telephonic case management conference with the attorneys of record. A week later, it entered a Case Management Order for the seventy-eight Plaintiffs who had complied with the *Lone Pine* order at least in part. Case Management Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss.

Mar. 31, 2016), ECF No. 76. The Court ordered each side to designate ten Plaintiffs who had complied with the *Lone Pine* order for participation in a discovery pool, and each side would then choose two of the discovery pool Plaintiffs to proceed to trial. *Id.* at 2. The Court ordered the parties to mediate the remaining claims of those who had complied with the *Lone Pine* order after the trial, and following the mediation, the Court would hold a scheduling conference to determine the best plan for subsequent discovery pools and/or trials. *Id.* at 3.

On September 9 and 16, 2016, Plaintiffs submitted their final response to the Court's *Lone Pine* order. *See* Plaintiff's Submission in Response to *Lone Pine* Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Sept. 9, 2016), ECF No. 98; Plaintiffs' Supplemental and Corrected Submission in Response to *Lone Pine* Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Sept. 16, 2016), ECF No. 103. On September 26, 2016, Plaintiffs' counsel filed a Motion to Withdraw from representation of the Plaintiffs who had declined to pay for sampling and testing to confirm the presence of contaminants on their property. *See* Motion to Withdraw, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Sept. 26, 2016), ECF No. 104. Plaintiffs' counsel argued that they should be permitted to withdraw because of the unreasonable financial burden testing every Plaintiffs' property would impose on their firm.

On September 27, 2016, The Court ordered the Plaintiffs who had not complied with the *Lone Pine* order (the "untested Plaintiffs") to show cause why their claims

should not be dismissed, and to address whether the potential dismissal should be with or without prejudice. Order to Show Cause at 2, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Sept. 27, 2016), ECF No. 105. The Court also ordered Plaintiffs' counsel to show cause why they should be permitted to withdraw as counsel for Plaintiffs whose properties had been tested for contaminants but returned negative results (the "non-detect Plaintiffs"). *Id.* Finally, the Court ordered the non-detect Plaintiffs to show cause why their claims should not be dismissed. *Id.*

The parties filed briefs in response to the Court's Order to Show Cause. *See* Plaintiffs' Response, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Oct. 11, 2016), ECF No. 108; Defendant's Response, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Oct. 24, 2016), ECF No. 109; Plaintiffs' Reply, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Nov. 1, 2016), ECF No. 111. On December 14, 2016, the Court set a settlement conference for January 13, 2017. Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Dec. 14, 2016), ECF No. 123.

On January 3, 2017, the Magistrate Judge entered his Report and Recommendations. *See* Report and Recommendations, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Jan. 3, 2017), ECF No. 127. He found that 248 Plaintiffs had not complied with the *Lone Pine* order. Some – the non-detect Plaintiffs – had tested their properties for contaminants but found none. Some – the untested Plaintiffs – had not tested their properties for contaminants. The Magistrate Judge noted that the original *Lone Pine* order had been entered over two years prior, and that Plaintiffs

had received multiple extensions of time to comply with its requirements. Therefore, consistent with applicable Fifth Circuit precedent, he recommended that the non-compliant Plaintiffs' claims be dismissed with prejudice.

With respect to Plaintiffs' counsel's Motion to Withdraw, the Magistrate Judge recommended that the Court deny the motion. First, he noted that both Plaintiffs and their counsel had been aware of the potential cost of pursuing this case for a significant time, yet Plaintiffs' counsel waited until approximately two weeks after the expiration of the *Lone Pine* deadline to file a motion to withdraw – after it was clear that their clients' claims were in danger of being dismissed. The Court further noted that Plaintiffs' counsel had provided a ballpark figure of the cost to continue with the litigation, but failed to provide any specific facts in support of their claim that the case posed too much financial risk for their firm to pursue.

On January 17, 2017, Plaintiffs filed their objections to the Magistrate Judge's Report and Recommendations. Plaintiffs' Objections, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Jan. 17, 2017), ECF No. 128.

On January 13, 2017, the parties participated in a settlement conference with the Magistrate Judge, but they were unable to agree on a settlement. However, on January 19, 2017, the Court held a pretrial conference in *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP, and they resumed settlement negotiations for both *Hollingsworth* and *Abner*. After lengthy discussions, the parties agreed to a joint settlement of all claims in both cases.

Over the next four months, Plaintiffs' counsel worked on getting signatures from

Plaintiffs, ensuring that the proper parties were named as Plaintiffs in this case, squaring away any probate or chancery court matters that might exist, and attempting to locate unresponsive Plaintiffs. *See, e.g.* Plaintiffs' Unopposed Motion for Substitution of Parties, *Abner v. Hercules*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 12, 2017), ECF No. 130; Unopposed Motion to Dismiss, *Abner v. Hercules*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 12, 2017), ECF No. 131; Unopposed Motion for Substitution of Party, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 17, 2017), ECF No. 134.

On May 23, 2017, the Court entered the Parties' Agreed Order of Dismissal with Prejudice. Agreed Order of Dismissal with Prejudice, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 23, 2017), ECF No. 136. The Order dismissed the claims of all Plaintiffs except those listed in Exhibits A and B to the Order. Specifically, the claims of Plaintiffs Ollie Bohanna, Dorothy Bridges, Dorothy Chapman, Ann Georgian, Irma Lee Landrum, and Lamar Roberts were not dismissed because they died while the lawsuit was pending, and the chancery court had not yet approved the settlement of their claims. Exhibit A, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 23, 2017), ECF No. 136-1. The claims of Plaintiffs Donta Blaylock, Carlos R. Griffin, Wihlemenia Hosey, Elisha Jackson, Linzie Myers, Brenda Lee Pollard, Joseph Saucier, Martinez Saucier, Steve Sumrall, Jay Van-Orsdal, Dorothy Warren, Rita White, Patsy Wright, Marsha Bridges, Cedric Dallas, Lucy Holloway-Smith, Jerry Johnson, Pearlie D. Johnson, Deborah Kendrick, Creola McCarty, Abdul

Rasulallah, Lashun Singleton, Tracie Stenson, Paul Sykes, Saretha Whitsett, and Billy Carr were not dismissed because they either declined to agree to settlement or Plaintiffs' counsel were unable to locate them. Exhibit B, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 23, 2017), ECF No. 136-2.

On May 24, 2017, the Court entered an order to resume briefing on the Magistrate Judge's Report and Recommendations. Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 24, 2017). After briefing was completed on the Report and Recommendations, Plaintiffs' counsel filed a supplemental Motion to Withdraw. Motion to Withdraw, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. June 21, 2017), ECF No. 140. Therein, Plaintiffs' counsel represented that they were unable to make contact with Plaintiffs Donta Blaylock, Carlos R. Griffin, Wihlemenia Hosey, Elisha Jackson, Linzie Myers, Brenda Lee Pollard, Joseph Saucier, Martinez Saucier, Steve Sumrall, Jay Van-Orsdol, Dorothy Warren, Rita White, and Patsy White after repeated attempts to do so.

## B.    *Discussion*

When a party objects to a Report and Recommendation, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991). But the Court is not required to reiterate the Magistrate Judge's findings, *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993), and it need not consider frivolous or conclusory objections. *Battle v. Untied*

*States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1997). Moreover, a plaintiff who fails to present specific factual objections to a Magistrate Judge's report and recommendation has not raised a factual objection for the Court to address. *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993).

1.    *Plaintiffs Who Settled*

First, the claims of all Plaintiffs but those listed in Exhibits A and B to the Agreed Order of May 23, 2017, have been dismissed with prejudice pursuant to the parties' settlement agreement. *See* Exhibit A [136-1]; Exhibit B [136-2]. Therefore, the Report and Recommendations is **moot** with regard to the Plaintiffs who have settled.

2.    *Plaintiffs Who Declined Settlement/Failed to Communicate*

As for the Plaintiffs who either declined to approve the settlement agreement and/or failed to return their counsel's communications, the Court adopts the Report and Recommendations in full. The claims of Plaintiffs Donta Blaylock, Carlos R. Griffin, Wihlemenia Hosey, Elisha Jackson, Linzie Myers, Brenda Lee Pollard, Joseph Saucier, Martinez Saucier, Steve Sumrall, Jay Van-Orsdal, Dorothy Warren, Rita White, Patsy Wright, Marsha Bridges, Cedric Dallas, Lucy Holloway-Smith, Jerry Johnson, Pearlie D. Johnson, Deborah Kendrick, Creola McCarty, Abdul Rasulallah, Lashun Singleton, Tracie Stenson, Paul Sykes, Saretha Whitsett, and Billy Carr[13] are **dismissed with prejudice** for their failure to comply with the Court's orders, for the same reasons provided in the Magistrate Judge's Report and Recommendations [127].

---

[13]*See* Exhibit B to Agreed Order, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 23, 2017), ECF No. 136-2.

Plaintiffs asserted several objections to dismissal of their claims. First, they contend that dismissal of their claims would be premature. They argue that in other cases where *Lone Pine* orders were entered, they were entered at "much later stages of litigation than was done here." Objections [128], at 3. This appears to be a hybrid argument. Plaintiffs argue that 1) the Court should not have entered a *Lone Pine* order because it was too early in the proceedings, and 2) the posture of this case calls for a lesser sanction.

The Court has repeatedly addressed Plaintiffs' argument that it was too early for the entry of a *Lone Pine* order. For example, in the Court's Memorandum Opinion and Order of January 13, 2016, the Court spent at least three pages explaining why the cases's posture and case management needs necessitated entry of a *Lone Pine* order. *Abner*, 2016 U.S. Dist. LEXIS 179956 at *231-*235. The Magistrate Judge thoroughly addressed this issue in his Opinion and Order of Nov. 10, 2014. *See Abner v. Hercules, Inc.*, 2014 U.S. Dist. LEXIS 158892, at *13-*17 (S.D. Miss. Nov. 10, 2014). The Court adopts and incorporates the reasoning and conclusions from its prior rulings.

Up to this point, Plaintiffs' argument has been that it was inappropriate to enter a *Lone Pine* order before conducting discovery and allowing Plaintiffs to develop their case. Of course, the Court consistently rejected this argument because Plaintiffs reaped the benefit of discovery conducted in other cases involving this Defendant. Plaintiffs filed this suit armed with voluminous discovery materials from *Blackard v. Hercules,*

*Inc.*, including deposition transcripts and several decades' worth of documents.[14] They also benefitted from discovery in *Hattiesburg v. Hercules, Inc.*, No. 2:13-CV-208-KS-MTP, and *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP. The *Lone Pine* order specifically provides that the "discovery conducted in *Blackard* . . . may be used in this case." Case Management Order No. 1 [36], at 1. Finally, Plaintiffs never articulated what they hoped to learn from discovery that they couldn't gather from the materials already in their possession, and they never presented a reasonably efficient, cost-effective, and practicable plan to move forward with full discovery and toward trial for those who failed to comply with the *Lone Pine* order and/or whose testing did not reveal any contaminant.

Having been allowed to proceed to full discovery with a subset of Plaintiffs who tested their property and found contaminants, Plaintiffs shifted their argument slightly. Plaintiffs now argue that they should be permitted to "test[] the merits of Hercules's defenses" prior to "shouldering the burden of sampling all properties . . . ." Objections [128], at 4. They contend that it is "unfair" to require them to test samples from each property before they are permitted to proceed to trial on a subset of properties.

---

[14]*See, e.g.* Order on Motion to Compel, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. June 25, 2013), ECF No. 125; Order on Motion for Protective Order, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. Feb. 3, 2014), ECF No. 256; Attachments to Response in Opposition to Motion for Partial Summary Judgment, No. 2:12-CV-175-KS-MTP (S.D. Miss. May 5, 2014), ECF Nos. 351-355; Order to Provide Indexed and Bound Hard Copies of Exhibits, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. May 15, 2014), ECF No. 368.

As the Court has repeatedly noted, the *Lone Pine* order does not require Plaintiffs to produce anything they will not ultimately be required to produce in support of their claims. *See Prescott*, 740 So. 2d at 310-11; *Anglado*, 716 So. 2d at 548-49. Moreover, the burden is minimal when compared to what Plaintiff will have to present at trial. The Court did not require Plaintiffs to "provide expert reports sufficient to survive a *Daubert* challenge or even provide an expert who will testify at trial. Rather, the Court is requiring Plaintiffs to make a minimal showing consistent with Rule 26 that there is some kind of scientific basis" for their claims. *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 744 (E.D. La. 2008). Indeed, this is "information which plaintiffs should have . . . before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3)." *Acuna*, 200 F.3d at 340.

Plaintiffs have not articulated any reason why the Court should wait until after a subset of their claims is tried to dismiss the claims of the non-compliant Plaintiffs. Indeed, there will be no trial insofar as most of the Plaintiffs settled their claims. The only Plaintiffs excluded from the settlement are those who died during the pendency of the case and must receive chancery court approval, *see* Exhibit A to Agreed Order [136-1], and those who either declined to accept the settlement or failed to return their counsel's communications. *See* Exhibit B to Agreed Order [136-2]. Among those who declined to accept the settlement, none complied with the *Lone Pine* order. *Compare* Exhibit B to Agreed Order [136-2], *to* Exhibit A to Case Management Order [76].

As for Plaintiffs' contention that a lesser sanction would be more appropriate,

the Court disagrees for the same reasons provided in the Magistrate Judge's Report and Recommendations. The Court gave Plaintiffs multiple warnings that failure to comply with the *Lone Pine* order could result in dismissal of their claims. But after multiple extensions of time to comply with its requirements, they refused to do so. Under these circumstances, there is no lesser sanction that the Court can impose to enforce its order.

Plaintiffs also argue that they did, in fact, comply with the *Lone Pine* order insofar as they satisfied its purpose. Plaintiffs contend that their evidence of contamination on some properties is sufficient to satisfy the *Lone Pine* order as to all properties within "the zone of impact." But Plaintiffs plainly did not comply with the *Lone Pine* order. The order required each Plaintiff to demonstrate as to each of their properties: a) the property and the alleged migration pathway had been sampled by a qualified expert; b) the samples had been analyzed by a qualified laboratory; c) lab analysis had detected constituents that had been detected on the Hercules site; and d) lab analysis had confirmed the existence of a migration pathway from the Hercules site to the property, or other cause. Case Management Order No. 1 [36]. The Plaintiffs who declined to approve the settlement agreement and/or failed to return their counsel's communications did not comply with these requirements.

Plaintiffs argue that the Court erred by entering a *Lone Pine* order because the circumstances of this case did not justify entry of such an order. The Court rejects this argument for the same reasons provided in the Magistrate Judge's opinion of

November 10, 2014. *Abner*, 2014 U.S. Dist. LEXIS 158892 at *12-*22.

    *3.    Deceased Plaintiffs*

Plaintiffs Ollie Bohanna, Dorothy Bridges, Dorothy Chapman, Ann Georgian, Irma Lee Landrum, and Lamar Roberts died while this matter was pending. Plaintiffs' counsel has represented to the Court that all but one of these Plaintiffs' heirs has hired separate counsel to handle estate matters before the chancery court.

The attorneys in this matter negotiated a settlement at the pretrial conference of January 19, 2017. On May 23, 2017, the Court entered the parties agreed order dismissing the claims of the Plaintiffs who accepted the negotiated settlement. Therefore, Plaintiffs and their counsel have had eight months to figure out which Plaintiffs had deceased, track down their heirs, inform them of their potential claims and the settlement, and initiate chancery court proceedings to obtain approval of the settlement. That is more than enough time, and the Court declines to leave this matter pending any longer.

Accordingly, the Court also **adopts** the Report and Recommendations with respect to those Plaintiffs who died while the lawsuit was pending. The claims of Plaintiffs Ollie Bohanna, Dorothy Bridges, Dorothy Chapman, Ann Georgian, Irma Lee Landrum, and Lamar Roberts are **dismissed with prejudice** for their failure to comply with Court orders. However, the Court will consider reinstatement of these Plaintiffs' claims if they produce to the Court a copy of state court documents demonstrating the issuance of letters testamentary, the administration of an estate, or some substantial progress toward chancery court approval of the settlement within

thirty days of the entry of this order.

*4.    Withdrawal*

Finally, the Court **adopts** the Magistrate Judge's Report and Recommendations as to Plaintiffs' counsel's Motion to Withdraw [104] for the same reasons provided in the Report and Recommendations. The Court adopts the same reasoning with respect to Plaintiffs' counsel's supplemental Motion to Withdraw [140]. As all Plaintiffs' claims are either moot or dismissed, Plaintiffs' counsel's Motions to Withdraw [104, 140] is moot.

SO ORDERED AND ADJUDGED this 25th day of September, 2017.

_____/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE